**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| Gary Curtis, | : | Case No. 3:03 CV 07506 |
| Plaintiff, | : | |
| vs. | : | |
| Dixon Ticonderoga Company, | : | **MEMORANDUM DECISION AND ORDER** |
| Defendant. | : | |

The parties have consented to have the undersigned Magistrate Judge enter final judgment in this diversity employment discrimination case filed pursuant to Ohio Rev. Code § 4112.02 *et .seq*.  This Court has jurisdiction pursuant to 28 U. S. C. § 1332.  Pending is Defendant's Motion for Summary Judgment (Docket No. 36),  Plaintiff's Opposition (Docket No. 39) and Defendant's Reply (Docket No. 44).  For the reasons that follow, Defendant's Motion for Summary Judgment is granted and the case is dismissed.

## FACTUAL BACKGROUND

Plaintiff, a resident of Sandusky, Erie County, Ohio, was hired by Defendant on November 29, 1978 and terminated in October 2001 (Docket No. 37, pp. 20, 21).  Defendant, a manufacturer of writing equipment and art supplies, is incorporated under the laws of the State of Delaware, has its principal place of business in the State of Florida and operates a plant in Sandusky, Ohio.  (Docket No. 1, ¶ 4).

Plaintiff was hospitalized for three weeks after his first panic attack in 1990 or 1991 (Docket No. 37, pp. 88, 80).  Upon his discharge, Plaintiff was prescribed maintenance medication (Docket No. 37, p. 93).  Plaintiff unilaterally decided to stop taking the medication in June 1993 (Docket No. 37, pp. 93-94, 96).  He continued to attend a therapy session with his psychiatrist twice yearly (Docket No. 37, pp. 99, 113).

Plaintiff concedes that on May 8, 1997, he was suspended for calling a fellow employee a vulgar name (Docket No. 37, p. 54).  Later, Plaintiff threatened the life of the company owner and was given a one week suspension (Docket No. 27, pp. 30-31).  On September 10, 2001, Defendant announced that the Sandusky plant was closing (Docket No. 37, p. 85).  The World Trade Center in New York was attacked on the following day.  During the week of September 27, 2001, Defendant's employees, Mike Collingsworth and Scott Roth, claim that Plaintiff said that the corporate personnel in the World Trade Center deserved to die (Docket No. 36, Exhibit D).  His co-workers also claim that Plaintiff made comments that if he lost his job, he would fly to Florida and kill the people at the corporate office (Docket No. 36, Exhibit D).  Plaintiff denies that he made any threats.  In the alternative, Plaintiff claims that his comments were the continuation of a joke told during the week of September 17, 2001 (Docket No. 37, pp. 35, 59, 60).

Plaintiff was advised by his brother on October 3, 2001, that his co-workers had informed management of his comments (Docket No. 37, p. 45).  Plaintiff worked on the following Thursday and Friday (Docket No. 37, pp. 45, 47).  On October 6, 2001, Plaintiff was treated for depression with a strong anxiety component (Docket No. 37, Docket No. 10, Exhibit K).  His physician wrote a medical excuse for Plaintiff's absence from work from October 8 through October 14, 2001 (Docket No. 37, p.

2

125). As a further part of his treatment, Plaintiff was prescribed medication; however, he did not seek

further psychiatric treatment until March 2002 (Docket No. 37, p. 107). In the meantime, Defendant

issued a memorandum on October 9, 2001 reminding all employees of the zero tolerance policy for threats

and intimidation and their duty to report suspicious individuals and activities (Docket No. 36, Exhibit H).

When Plaintiff returned to work on October 15, 2001, he was terminated (Docket No. 37, Exhibit K).

At the time of Plaintiff's dismissal, he was earning $12.10 per hour (Docket No. 37, p. 34).

Plaintiff filed a grievance on October 15, 2001 alleging that he had been wrongfully discharged

(Docket No. 37, Defendant's Exhibit 5). Plaintiff was employed by RheTech on April 1, 2002 earning

$8.60 per hour (Docket No. 37, 150). Plaintiff's grievance was submitted to arbitration and on August

12, 2002, Plaintiff's grievance was denied (Docket No. 37, Defendant's Exhibit 6). In November 2002,

the Sandusky plant was closed (Docket No. 43, p. 6). On August 28, 2003, Plaintiff filed a cause of

action seeking judicial review under OHIO REV. CODE § 4112.02 (Docket No. 1).

## OHIO REV. CODE § 4112.02

It shall be an unlawful discriminatory practice:

(A) For any employer, because of the race, color, religion, sex, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

## DISCUSSION

Plaintiff claims that Defendant wrongfully discharged him based on disability. Defendant contends

that Plaintiff is unable to make a prima facie case for disability discrimination since prescribed medication

controls his anxiety. Accordingly, Defendant claims entitlement to judgment as a matter of law.

Under Ohio law, it is unlawful for any employer, because of a disability, to discharge an employee without just cause or to otherwise discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment. OHIO REV. CODE § 4112.02(A) (2005). To survive a motion for summary judgment, a plaintiff arguing disability discrimination must establish a prima facie case of discrimination. *Hood v. Diamond Products*, 74 Ohio St. 3d 298, 658 N. E. 738 (1996).

To establish a prima facie case of disability discrimination under OHIO REV. CODE § 4112, an employee must show (1) that he or she was disabled; (2) that his or her employer took an adverse employment action against him or her at least in part because he or she was disabled; and (3) that he or she could safely and substantially perform the essential functions of the job in question despite his or her disability. *Grooms v. Supporting Council of Preventative Effort*, 157 Ohio App.3d 55, 69, 809 N.E.2d 42, 53 (2004) (*citing Hood, supra*). Once an employee establishes a prima facie case of disability discrimination, "the burden then shifts to the employer to set forth some legitimate, non-discriminatory reason for the action taken." *Id.* (*citing Hood, supra*). If the employer sets forth a legitimate, non-discriminatory reason then the burden shifts to the employee to demonstrate that the employer's stated reason was a pretext for impermissible discrimination. *Id.*

Not every physical or mental condition from which a person suffers constitutes a disability. *Maloney v. Barberton Citizens Hospital*, 109 Ohio App.3d 372, 672 N.E.2d 223 (1996). Specifically, a disability is defined as a "physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of a physical or mental impairment; or being regarded

4

as having a physical or mental impairment." OHIO REV. CODE § 4112.01(A)(13) (2005).

The disability discrimination statute is designed to protect those who live with a handicap or disability that significantly affects the way they live their lives on a daily basis for a considerable period of time. *Columbus Civil Services v. McGlone*, 82 Ohio St.3d 569, 572, 697 N. E. 2d 204, 206 (1998). Short-term or temporary restrictions on an employee's physical health or imposed by a physician on an employee are not "substantially limiting," as required to establish a disability under the Americans with Disabilities Act (ADA) of 1990, as amended, or Ohio's handicap discrimination statute. *Roush v. Weastec, Inc.*, 96 F.3d 840, 843 (6th Cir. 1996).

In the present case, Plaintiff alleged that during the past ten years of his employment with Defendant, he suffered from anxiety problems resulting in his having to treat with a psychiatrist. The evidence presented, however, demonstrates that Plaintiff's anxiety was nothing more than a short-term or temporary mental impairment and that it had no adverse long-term residual effects. Plaintiff suffered his first panic attack in 1990 or 1991 (Docket No. 37, p. 88). Three weeks after the first episode, Plaintiff received a medical release to return to work (Docket No. 37, pp. 88, 89). Once he was prescribed medication, Plaintiff was able to return to work and engage in other life activities (Docket No. 37, p. 92). Thereafter, Plaintiff testified that his anxiety was under control so long as he took his medication (Docket No. 37, p. 126).

Plaintiff was treated by Dr. Lin twice annually; however, he never confided in him that he had not taken medication since June 1993 (Docket No. 37, pp. 94-95). His second episode did not occur until October 6, 2001. During that time, Plaintiff was not taking his medication (Docket No. 37, p. 94). Within approximately ten days after the second episode, Plaintiff regained control of his life with medication

5

(Docket No. 37, p. 125).  Plaintiff had no adverse residual effects after two short-term anxiety attacks which incapacitated him for approximately thirty days within twenty-three years.

Plaintiff claimed in his deposition that he never requested accommodations and that he was able to work around his disability and successfully complete his job responsibilities (Docket No. 37, pp. 136-138).  Such evidence does not demonstrate that Plaintiff had a physical impairment which "substantially limited" a major life activity or constituted a disability as contemplated under OHIO REV. CODE § 4112.01(A)(13).

Plaintiff further argued that Defendant perceived him as disabled, apparently because the company knew he was taking medication for anxiety.  However, there is no evidence that the company believed him to be impaired with regards to a substantial life activity.  Roger Bibler testified that there was no evidence that Plaintiff's mental condition interfered with the performance of his work responsibilities (Docket No. 42, p. 49).  On occasion, Plaintiff was unable to meet production levels but according to plant steward, William Beier, Plaintiff was still able to perform the job.  William Beier did not perceive Plaintiff as disabled since he was ultimately able to meet the required production levels (Docket No. 43, p. 51).

Even assuming that Plaintiff could establish a prima facie case of disability discrimination, Defendant has proffered a legitimate, non-discriminatory reason for Plaintiff's termination.  Plaintiff was discharged for making death threats against the corporate office.  Plaintiff has failed to rebut this explanation or show that the reason for discharge is pretextual.

The Court concedes that Plaintiff suffers from an impaired medical condition; however, the episodes associated with such condition are short-lived.  Accordingly, Plaintiff's condition is not synonymous with being disabled as contemplated under Ohio's disability statute.

6

Since Plaintiff is unable to make a prima facie case for disability discrimination, Defendant's Motion for Summary Judgment is granted.

IT IS SO ORDERED.

<u>/s/Vernelis K. Armstrong</u>
Vernelis K. Armstrong
United States Magistrate Judge